JOHN L. YATES *vs.* PHILADELPHIA, BALTIMORE AND WASHINGTON
    RAILROAD COMPANY, a corporation of the State of Dela-
    ware.

*Personal Injuries—Pleading—Evidence—Common Carrier—*
*Rules of Railroad Company; Notice to Produce; When*
*in Evidence—Amendment of Narr During Trial*
*—Constitution—Statute—Term—Con-*
*tinuance.*

1. Counsel for the plaintiff having given written notice to counsel
for the defendant to produce a certain rule of the company, *held* that such
rule should be asked for when the plaintiff had introduced the evidence
under which such rule became pertinent and proper evidence in the case;
and that the plaintiff should put his witness on the stand and bring him
up to that point.

2. When such evidence has been produced and the rule asked for has
been handed to the counsel for the plaintiff by counsel for the defendant,
the latter will not then be permitted to object to its admission in evidence
on the ground that it is not pertinent.

3. Under the constitutional and statutory provisions respecting
amendments, a plaintiff will be permitted to amend his narr during the
progress of the case; but the Court may continue the case and impose the
costs of the term upon the plaintiff.

(*July* 3, 1906.)

LORE, C. J., and PENNEWILL, J., sitting.

*John F. Malloy, John W. Brady* and *Levin Irving Handy*
for plaintiff.

*Andrew C. Gray* and *John F. Neary* for defendant.

Superior Court, New Castle County, May Term, 1906.

ACTION ON THE CASE (No. 125, May Term, 1906), to recover
for personal injuries.

At the trial, the following questions were raised and ruled
upon.

*Mr. Handy:*—If the Court please, yesterday morning I gave

YATES vs. P., B. AND W. R. R.          473

EVIDENCE.

written notice to the counsel on the other side to produce certain rules of the railroad company, and I now ask for the production of those rules because I propose first to put upon the witness stand the plaintiff and to show by him that he was aware of this rule of the railroad company which prohibits a train's passing on a parallel track a passenger train stopped at a station receiving or discharging passengers. After proving his knowledge of the rule, our contention of law, well established, will be that he had a right to infer that this rule would be obeyed and to rely upon it in coming out from a railroad train.

*Mr. Gray:*—We have the rules here, but I do not think this is the proper time to ask for them. He can ask for them when he has introduced the evidence under which the rules become pertinent and proper evidence in the case.

LORE, C. J.:—Suppose you put the witness on the stand, Mr. Handy, and bring him up to that point.

Mr. Handy thereupon placed the plaintiff upon the stand, who testified fully respecting the cause of the accident in which he was injured and the nature and extent of his injuries. He then examined the plaintiff as follows:

Q. Did you know at the time of this accident anything about rules of the Philadelphia, Wilmington and Baltimore Railroad Company prohibiting one train passing another while discharging or taking on passengers at a station?

(Objected to by Mr. Gray, of counsel for defendant, as leading and suggestive.)

*Mr. Handy:*—I withdraw the question and ask for the production of those rules under the notice served upon counsel for defendant. My friend says he has them here, and I insist that he either produce them or refuse to produce, in which event I will proceed to prove the same by secondary evidence.

*Mr. Gray:*—I refuse to produce them because counsel for plaintiff has proved nothing showing the relevancy of the rules in this case, and they are not admissible at present. When my learned friend has shown the relevancy of the rules he can demand their production. I have them here waiting for him.

LORE, C. J.:—For what purpose do you ask for the introduction of the rules, Mr. Handy?

*Mr. Handy:*—I have alleged in this narr that the defendant company negligently ran a freight train by a passenger train which had stopped at a station to discharge passengers. I have proved that this was a passenger train of the defendant company, that it had stopped at a station to discharge passengers and that at that time while it was so discharging passengers a freight train passed it in violation of the rule of the company forbidding its servants doing that very thing. It is plainly relevant.

LORE, C.J.:—You aver in your declaration that there were such rules?

*Mr. Handy:*—No sir; I have averred that they negligently ran this train. The rule is a matter of evidence, not a matter of pleading.

PENNEWILL, J.:—You mean that it is negligence for the company to move a train in violation of its own rules?

*Mr. Handy:*—Yes sir.

LORE, C. J.:—I understood your purpose was to show that there were such rules and that this man knew of the same and that he had a right to presume that the company would obey its own rules.

*Mr. Handy:*—Yes sir. The books say if there are public rules of a company, it is a presumption that passengers know them.

LORE, C. J.:—You say you propose to connect the existence of that rule with the knowledge of the plaintiff so as to affect his conduct?

*Mr. Handy:*—Yes sir.

PENNEWILL, J.:—Have you shown yet a condition of things which would constitute a violation of the rule?

*Mr. Handy:*—I have proved that this passenger train stopped there to discharge passengers, and I have proved that while it was stopped there a freight train passed by it.

LORE, C. J.:—We think you should produce the rules, Mr. Gray.

EVIDENCE—OPINION.

*Mr. Gray:*—(Producing a small book)    Here it is open. We have produced the rules, sir.

*Mr. Handy:*—It having been produced on notice, it is now in evidence, and I desire to read it to the jury.

*Mr. Gray:*—I claim the rule is not pertinent.

LORE, C. J.:—When you produce it and don't object on the ground of pertinency, it is admitted.

PENNEWILL, J.:—Is it not now in evidence?

*Mr. Gray:*—No sir; we were instructed to produce the rule. I object to the rule being admitted in evidence or read to the jury, on the ground that it is not pertinent.

LORE, C. J.:—You ought to have made that objection before you handed in the book.

*Mr. Gray:*—I did make the objection and the Court overruled me and ordered me to produce, and I ask for an exception to that ruling of the Court.

*Mr. Handy:*—He is too late to ask for the exception now.

PENNEWILL, J.:—Did you object to the production of the rule because it was not pertinent?

*Mr. Gray:*—Yes sir.

LORE, C. J.:—Before you handed it to him?

*Mr. Gray:*—Yes sir.

PENNEWILL, J.:—I understood your objection was that counsel for plaintiff had not shown that a freight train was passing at the time?

(At the request of the Court, the stenographer here reads from the stenographic report touching the matter in controversy.)

PENNEWILL, J.:—Do you mean, Mr. Gray, that the plaintiff has not shown that a train was approaching the station where the passenger train was discharging passengers?

*Mr. Gray:*—Yes sir.

LORE, C. J.:—We overrule your objection.    We think it is admissible.

(The same is marked by the stenographer "Plaintiff's Exhibit No. 1.")

*Mr. Handy:*—I desire to read this rule to the jury.

(At the request of Mr. Gray, Mr. Handy agreeing, the witness retires from the room while the rule is being read to the jury.)

*Mr. Handy:*—Under the sub-head of "Movement of Trains," Rule 114 of the defendant company is as follows:

"A train approaching a station where a passenger train is receiving or discharging passengers must be stopped before reaching the passenger train."

Q.　Did you or did you not know on the 24th of November 1903 of any rule of the defendant company with regard to other trains passing by a passenger train discharging passengers at a station?

(Objected to by counsel for defendant as leading and suggestive.)

LORE, C. J.:—He is merely asking if he knew of the existence of a rule.　We think that is admissible.

A.　All that I know was what I have heard other people say. I have never read the book of rules.　I did not have it and never used it.　I have only heard railroad men say.

*By Mr Gray:*

Q.　(Interrupting witness) Don't say what you heard other people say.

(Mr. Gray objects to the question as hearsay.)

LORE, C. J.:—We think he has a right to answer the question; that he has a right to state from what source he got his information as to the existence of rules.

*By Mr. Handy:*

Q.　Go on and tell what you know about the rule?

A.　All I know is that they are not allowed for one train to pass another when the other one is discharging passengers.

Q.　Did you know that at that time?

A.　Yes sir ,at that time.

Q.　How long have you been knowing that?

A.　Ever since I have been railroading.

Q. You have been employed in connection with railroad work a good while, have you not?

A. Yes sir.

Q. Constructing railroads, on the road?

A. Yes sir.

Q. How many years has it been since you have been employed as a foreman of a gang of men engaged in construction work on railroads?

A. From 1879 working on the Shenandoah Valley, and from that on the B. & O., and the Pennsylvania.

After the physician who amputated the plaintiff's leg had testified to the nature and extent of the injuries, the following application was made:

*Mr. Handy:*—If the Court please, at this stage of the case, I ask that the plaintiff be permitted to amend his narr. The first count, in describing the injuries inflicted on the plaintiff, says: "That the said locomotive engine drawing the said train of passenger cars struck and knocked down the said plaintiff while he was proceeding from said train of passenger cars to the station house of the said defendant at Riverside aforesaid, using due care and caution on his part, by means whereof the said plaintiff was greatly pained, crushed, wounded" etc. A variance has appeared between the declaration and the verbal evidence in this case, not material to the merits of the case, and by which the opposite party cannot be prejudiced in the conduct of its defense. This variance consists in evidence that the chief injury suffered by the plaintiff came from having his right leg run over by a freight car after he had been struck and knocked down. Plaintiff desires to amend the first count by inserting after the words "struck and knocked down" the words "and run over;" also to amend in a similar manner the other counts in the narr, and we ask that the proposed amendment shall be forthwith made by the Prothonotary and that thereupon the trial shall proceed as if no variance had appeared.

*Rev. Code* (1893), *p.* 849, *Sec.* 14; *Beeber vs. Walton and Whann Co.,* 7 *Houst.,* 471 (475);

*Coverdale's Admr. vs. Simpson,* 3 *Pennewill,* 269 (272).

(Mr. Gray, of counsel for defendant, objects to the amendment being allowed, on the ground that it would prejudice the defendant in its defense, and that he was not prepared to go on at the present time should the amendment be allowed.)

LORE, C. J.:—The Court have no doubt as to the right of the plaintiff to amend his declaration.

*Section* 24 *of Article* 4 *of the Constitution* provides that "In civil causes, when pending, the Superior Court shall have the power, before judgment, of directing, upon such terms as it shall deem reasonable, amendments, in pleadings and legal proceedings, so that by error in any of them, the determination of causes, according to their real merits, shall not be hindered." The Court have uniformly acted upon that in a broad and liberal sense.

While the Court are clear as to the plaintiff's right to amend, Mr. Gray says that he was prepared to meet the case upon the issue as presented in the original pleadings, but that he is not prepared to meet it now as amended; that he wants other witnesses and that he feels he would not be doing justice to his client should he try the case now as amended.

We will have to continue the case and impose the costs of the term upon the plaintiff.

(A juror was accordingly withdrawn and the case ordered continued to the November Term, 1906.)